365 So.2d 289 (1978)
Honorable Ernest N. MORIAL, Mayor of the City of New Orleans and Honorable Joseph I. Giarrusso, Councilman-At-Large and President of the Council of the City of New Orleans
v.
Honorable William J. GUSTE, Jr., Attorney General of the State of Louisiana, and Honorable Harry Connick, District Attorney For the Parish of Orleans.
No. 9690.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1978.
Writs Refused December 14, 1978.
*290 Donald A. Hoffman, City Atty. and David A. Marcello, New Orleans, for plaintiffs-appellees.
William F. Wessel, New Orleans, for Harry Connick, defendant-appellant.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, First Asst. Atty. Gen., and Ronald C. Davis, Staff Atty., New Orleans, for Honorable William J. Guste, Jr., defendant.
Before SAMUEL, BOUTALL and SCHOTT, JJ.
SAMUEL, Judge.
This suit for declaratory relief was filed by Ernest N. Morial, Mayor of the City of New Orleans, and Joseph I. Giarrusso, Councilman at Large and President of the New Orleans City Council, seeking determination of the status, as against the Louisiana Public Meetings Law,[1] of a proposed informal meeting between the Mayor and other members of his staff and any City Council members who chose to attend. Plaintiffs allege the meeting was called by the Mayor for the purpose of reporting to the City Council members on the status of the city's executive branch and to inform them of "matters planned by Mayor Morial and falling within the mandated Charter responsibilities of the Executive Branch of [the city] government."
On the theory that they are responsible for enforcing the Public Meetings Law, the petition names the Louisiana Attorney General and the District Attorney for the Parish of Orleans as defendants. The District Attorney filed an exception of no cause of action and a motion for summary judgment. The Attorney General filed an exception of no cause of action based on the contention that the petition sought advisory relief only and did not set forth a justiciable controversy sufficient to serve as a foundation for a declaratory judgment.
The trial judge rendered judgment: (1) maintaining the Attorney General's exception and dismissing him from the proceeding as an improper party in the absence of an attack on the constitutionality of the statute; (2) dismissing the District Attorney's exception and motion; and (3) declaring the proposed meeting, as set forth in the pleadings and the evidence, valid and not in violation of the Public Meetings Law without being open to the public because it was called by the Mayor, who is not a "public body" under the statute. The District Attorney has appealed.
The terms of the proposed meeting were stipulated by the parties as follows: Letters were sent from the Mayor to members of the City Council inviting them to meet with him, the City's Chief Administrative Officer and members of his executive staff on June 16, 1978. The meeting was called by the Mayor for the purpose of reporting to members of the Council on past and planned activities of his office. It was called at the Mayor's initiative without prior consultation with the councilmen of the time, place, or subject matter of the meeting. Attendance at the meeting by members of the council was purely voluntary, and there was no intention by the Mayor to officially convene the council pursuant to his powers under the City Charter.[2] Mayor Morial would testify that no agenda for the meeting had been formulated or distributed, no votes of any kind were to be taken, no decisions were to be made and no binding commitments were to be exacted. Mayor Morial specifically stated the meeting would not be open to the public.
That portion of the judgment which grants declaratory relief basically follows these stipulations. It reads:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a Declaratory Judgment issue herein declaring that the meeting called by the HONRABLE ERNEST N. MORIAL, Mayor *291 of the City of New Orleans, to be held at 1:00 P.M. on June 16th, 1978, may be held without being open to attendance by the public, provided that the said meeting is held for the sole purpose of discussing matters of mutual interest and concern to those present, forming part of the Legislative and Executive branches of City government, and provided that such information is given to those present without any decisions being made, requested or required, and no commitments of any kind are exacted of those present; and no votes (`straw' or otherwise) are taken, recorded or unrecorded."
The specific statutory language upon which petitioners request declaratory relief is R.S. 42:5. That portion of the statute reads:
"For the purposes of R.S. 42:4.1 through R.S. 42:10, `meeting' means the official convening of town and city councils, police juries and other governing bodies; school boards and boards of levee and port commissioners; boards of publicly operated utilities; and all state, parish, or municipal boards or authorities with policy making or administrative functions which receive or expend tax funds, the legislature specifically exempted, to discuss or act upon a matter over which the public body has supervision, control, jurisdiction, or advisory power. Such meetings shall be open to the public.
`Administrative conference' or `administrative session' means any assembly of a quorum of a public body listed in the definitions of `meeting' above, other than a regular, special, or rescheduled meeting, held by that body for the purpose of discussing matters on which definitive action can be taken or advice officially determined, by the public body but only at a regular, special, or rescheduled meeting. A function solely of a social nature is not an administrative conference."
The petitioners only pray for a declaratory judgment determining the legal status of Mayor Morial's proposed meeting in light of R.S. 42:5. They make no request for a declaration of the statute's unconstitutionality, nor do they seek injunctive relief. However, they allege the statute is so vague that neither they nor the members of the City Council can meet and know in advance whether the proposed meeting will be in violation of the Public Meetings Law, subjecting them to the criminal penalties established in R.S. 42:9, i. e., upon first conviction, a fine of not less than $100 and not more than $1,000 or imprisonment for not more than seven days and, upon any subsequent conviction, a fine of not less than $250 and not more than $2,000 or imprisonment for not more than thirty days, or both. Under R.S. 42:10A, the District Attorney is required to enforce the provisions of the Public Meetings Law. As such, petitioners contend the statute deprives them of their rights of due process, free speech and association under both federal and state constitutions.
In this court appellant makes no complaint regarding the merits of the trial court's decision, that the action proposed by plaintiffs is not prohibited by the Louisiana Public Meetings Law. Therefore, that issue is not before us. Appellant's argument and brief are concerned only with the issue of whether the court committed error in failing to dismiss the suit as to him by either maintaining his exception of no cause of action or granting his motion for summary judgment. He argues the exception should have been maintained or the motion granted because: (1) a declaratory judgment shall not issue where the decree will not terminate the uncertainty or controversy giving rise to the proceeding; (2) a declaratory judgment shall not issue except in a justiciable controversy; (3) a declaratory judgment shall not be rendered to decide future rights in anticipation of an event which may never take place; and (4) a declaratory judgment should not issue where the court would be powerless to enforce its decree and the Civil District Court *292 for the Parish of Orleans does not have the authority to enjoin the District Attorney from prosecuting.
Regarding appellant's arguments, the pertinent articles of the Louisiana Code of Civil Procedure provide:
"Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree." LSA-C.C.P. Art. 1871.
"A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." LSA-C.C.P. Art. 1872.
"The enumeration of Articles 1872 through 1874 does not limit or restrict the exercise of the general powers conferred in Article 1871 in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty." LSA-C.C.P. Art. 1875.
"The court may refuse to render a declaratory judgment or decree where such judgment or decree, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding." LSA-C.C.P. Art. 1876.
"Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is considered sufficient, the court, on reasonable notice shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith." LSA-C.C.P. Art. 1878.
The answer to appellant's first argument is contained in Code of Civil Procedure Article 1876, which clearly states the trial judge "may" refuse to render a declaratory judgment which, if rendered, would not "terminate the uncertainty or, controversy giving rise to the proceeding." The use of the verb "may" makes the rendition of such a judgment permissive[3] within the sound discretion of the trial court. We understand Article 1876 to mean the trial court must render a declaratory judgment when such a judgment would terminate the uncertainty or controversy giving rise to the proceeding but, within his sound discretion, he may choose or refuse to render a declaratory judgment which would not terminate such uncertainty. The trial court's wide discretion in giving or refusing declaratory relief is recognized in the jurisprudence.[4]
Appellant's second argument is answered by a reading of the Public Meetings Law and its numerous ambiguities. Many of its provisions are so vague they do not lead to ascertainable interpretations. The penalties provided by R.S. 42:9 are criminal in nature and subject a person violating this law to criminal sanctions.
Further, Article 1, § 13, of the Louisiana Constitution of 1974 provides an accused *293 shall be informed of the nature and cause of the accusation against him. However, Article 12, § 3 of the Constitution of 1974 provides that no person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law. This conflict is further compounded by R.S. 42:4.1 which, in setting forth the policy of the Public Meetings Law, mandates "the provisions of R.S. 42:4.1 through R.S. 42:10, shall be construed liberally".
Given this conflict between statutory and constitutional provisions, and given the criminal consequences which flow from acts in violation of the Public Meetings Law, appellant's contention that no justiciable controversy exists pales into insignificance. This situation is covered by LSA-C.C.P. Art. 1872, quoted above, which authorizes declaratory relief for a "person interested. . . whose rights . . . are affected by a statute . . ." This article authorizes such person to "have determined any question of construction . . . arising under the . . . statute . . ." The plaintiffs are clearly interested parties (on pain of jail sentence), and their rights to freedom of speech, etc., are directly affected by the Public Meetings Law. In this connection, we are mindful of what has been said by the Supreme Court concerning the question of what is a "justiciable controversy". In Abbott v. Parker,[5] the Supreme Court said:
"A `justiciable controversy' connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Further, the plaintiff should have a legally protectable and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."
Here, public officials are concerned about the proper performance of the duties of their office, and this is more than an advisory opinion. The meeting has been called, and a serious question exists as to whether the holding of the meeting will be in violation of the Public Meetings Law, thus subjecting the plaintiffs or either of them to a criminal prosecution. In our view, there is an existing actual and substantial dispute which meets the criteria contained in the above quotation from Abbott. There is a justiciable controversy here.
Appellant's third argument is that declaratory relief is not available to decide future rights in situations which may never take place. This argument lacks merit for the same basic reason set forth in answer to his second argument. We point out, in addition, the purpose of the declaratory judgment articles in the Code of Civil Procedure is to provide a remedy for one contemplating action which may result in criminal or civil sanctions and avoid acting at his own risk in areas where his rights are not clear. Since one purpose of declaratory judgments is to clarify the legal significance of actions before they take place, appellant's third argument is without merit.
Finally, appellant contends declaratory relief is inappropriate in this case because the Civil District Court for the Parish of Orleans would be without jurisdiction to enforce any judgment it rendered, and specifically could not enjoin the District Attorney from prosecuting plaintiffs if the District Attorney determined the actions approved by the court were in violation of the Public Meetings Law. The argument is in conflict with a line of Louisiana jurisprudence and is without merit.
In City of New Orleans v. Borey,[6] this court granted a request for a declaratory *294 judgment maintaining the constitutionality of Act 94 of 1950 which provided criminal penalties against any officer of a municipality who refused to parole a person upon request of an elected official given the parole power under that statute. In maintaining the jurisdiction of the Civil District Court to grant declaratory relief under a criminal statute, we made the following statements:
"We cannot agree with our learned brother below that no jurisdiction vested in him. True, § 2 of Act No. 94 of 1950 provides severe penalties against any officer of any municipality who shall refuse to parole any person upon the request of an elected official endowed with the power to parole under the provisions of the act. However, the mere fact of the presence of § 2 does not inhibit the Civil District Court for the Parish of Orleans from adjudicating the case. Although a statute or an ordinance contains penal provisions for violations of the terms thereof, a civil court is not necessarily divested of authority to enjoin the enforcement or test the constitutionality of the enactment. There are many laws, purely civil in their nature, which provide for penalties, e. g., the income tax law, the zoning law, and the various acts regulating the pursuit of trades, occupations, and businesses, and the licensing of persons engaging therein. The test is, if the statute complained of is injurious to property interests or civil rights, one affected may enjoin its enforcement." (Emphasis ours).
Other cases have relied on City of New Orleans v. Liberty Shop,[7] and it is established that the Civil District Court has jurisdiction to grant declaratory and injunctive relief in situations involving criminal statutes if such statutes are injurious to civil or property rights.
In this case, the Public Meetings Law directly affects plaintiffs' civil rights of freedom of speech and of assembly, and the Civil District Court consequently has jurisdiction to grant declaratory relief under its provisions. Moreover, the Civil District Court has jurisdiction to enforce the rights declared by it under the authority of Article 1878 of the Code of Civil Procedure, quoted above.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 42:4.1-10.
[2] Section 3-107(5).
[3] LSA-C.C.P. Art. 5053.
[4] Superior Oil Company v. Reily, 234 La. 621, 100 So.2d 888; State v. Board of Supervisors, Etc., 228 La. 951, 84 So.2d 597; Gary v. Marquette Cas. Co., La.App., 72 So.2d 619.
[5] 259 La. 279, 249 So.2d 908, 918.
[6] La.App., 52 So.2d 728.
[7] 157 La. 26, 101 So. 798; City of New Orleans v. Belas, 235 La. 867, 106 So.2d 291; City of New Orleans v. Lafon, La.App., 61 So.2d 270. Cf. Connick v. Lucky Pierre's, La., 331 So.2d 431.